FILED & ENTERED

MAY 06 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Jeffrey L. Hayden<br><br><br><br><br>Debtor(s). | Case No.: 1:14-bk-11187-MT<br><br>CHAPTER 11<br><br>**MEMORANDUM OF DECISION DENYING MOTION TO DISMISS BANKRUPTCY CASE UNDER § 1112(b)**<br><br><u>Vacated hearing</u>:<br>Date:        March 26, 2015<br>Time:        9:30 AM<br>Courtroom: 302 |

  Jeffrey L. Hayden ("Debtor ") has a business investing in real estate and business ventures.  *See* Declaration of Jeffrey Hayden, filed in support of Debtor's Opposition to the Motion (the "Hayden Dec.") ¶ 3.

  The Debtor is a member of the following real estate limited liability companies: (1) Asset Funding Group, LLC ("AFG"); (2) AFG Investment Fund I, LLC ("AFG I"); (3) AFG Investment Fund 2, LLC ("AFG 2"); (4) AFG Investment Fund 3, LLC ("AFG 3"); and (5) AFG Investment Fund 4, LLC ("AFG 4.") Beitler is the manager of the each of these limited liability companies. Hayden Dec. ¶ 4.

  Plaintiff holds an indirect ownership interest in AFG Investment Fund 5, LLC ("AFG 5"); AFG Investment Fund 6, LLC ("AFG 6"); and, AFG Investment Fund 7, LLC ("AFG 7").  AFG is the 100% member and manager of AFG 5 and AFG 6. AFG 5 is the

-1-

100% member of AFG 7, while AFG is the manager of AFG 7. *Id.*

Plaintiff's direct and indirect membership interests in AFG, AFG I, AFG 2, AFG 3, AFG 4, AFG 5, AFG 6, AFG 7 (collectively, "AFG Entities") are summarized as follows:

| ENTITY | MEMBERS | MANAGER |
|---|---|---|
| **AFG** | Plaintiff – 50% membership interest<br>Beitler – 50% membership interest | Beitler |
| **AFG I** | Plaintiff – 50% membership interest<br>Beitler – 50% membership interest | Beitler |
| **AFG 2** | Plaintiff – 50% membership interest<br>Beitler – 50% membership interest | Beitler |
| **AFG 3** | Plaintiff – 50% membership interest<br>Beitler – 50% membership interest | Beitler |
| **AFG 4** | Plaintiff – 1/3 membership interest<br>Dan McComb – 1/3 membership interest<br>Beitler – 1/3 membership interest | Beitler |
| **AFG 5** | **AFG** – 100% membership interest | **AFG -** managed by Beitler |
| **AFG 6** | **AFG** – 100% membership interest | **AFG -** managed by Beitler |
| **AFG 7** | **AFG 5** – 100% membership interest | **AFG -** managed by Beitler |

(Debtor asserts that AFG 7 was formed after the petition date (and unbeknownst to the Debtor) to purchase a loan by First Citizen's Bank ("FCB") to AFG 6. Hayden Dec. ¶¶ 27-29.)

Debtor and Beitler have issued personal guaranties of each promissory note issued by the AFG Entities, some of which have gone into default. AFG 5 is the only AFG Entity currently generating income. *Id.*

Currently, Debtor's sole source of income is his monthly distribution check from the AFG Entities. The Debtor states that, between 2007 and 2009 he received monthly distribution checks of approximately $100,000 from the AFG Entities. Hayden Dec. ¶ 9. Debtor asserts that since 2009 these checks have been substantially reduced. *Id.* A brief review of the Debtor's schedules and monthly operating reports filed in this case suggests that the Debtor has received monthly distribution checks of approximately

$50,000 - $60,000 for the past two years.

During the five years prior to the commencement of this case, the Debtor experienced major illness, an automobile accident, a falling out with Beitler that resulted in litigation and the failure of a business in which he had invested over $1 million. *See* Hayden Dec. ¶¶ 7, 11, 12.

In 2012, Beitler commenced an action against Hayden (No. BC476322; the "State Court Litigation") seeking repayment of $430,694.68 in loans that Beitler made Hayden. Hayden has filed a cross-complaint for breach of fiduciary duty in Beitler's management of the AFG Entities.

On October 25, 2013, FCB commenced an action in Los Angeles County Superior Court (No. BC525778; the "FCB Litigation") seeking payment on personal guaranties by Hayden and Beitler of a loan to AFG 6.

In January 2014, the Debtor sold his home at 6228 Sycamore Meadows, Malibu (the "Malibu Property') and related construction defect claims to Tasos Denos ("Denos"), in exchange for Denos's assumption of all obligations on the Malibu property (including first and second deeds of trust), Denos's forgiveness of his third deed of trust on the Malibu Property, and $488,279.64. Hayden Dec. ¶ 13.

On February 5, 2014, Commercial Bank of California ("Commercial Bank") commenced an action in Orange County Superior Court (No. 30-2014-00703031; the "Commercial Bank Litigation") against Hayden seeking repayment of a revolving line of credit issued to Hayden, in the amount of $236,196.74.

The Debtor filed for chapter 11 relief on March 10, 2014. In his schedules of assets and liabilities, filed with the petition, he lists:

- Personal property with known value of $241,172.74: cash (approximately $10,000); accounts receivable; security deposits and prepayments of rent; trust accounts with attorneys; and various items of tangible personal property
- Personal property of unknown value: memberships in the AFG Entities; the cross claim against Beitler in the State Court Litigation; and a potential claim against Debtor's automobile insurer
- Secured claims: lease of a 2014 Audi
- Priority claims: Internal Revenue Service and Franchise Tax Board, for notice purposes only (although the IRS subsequently filed proof of claim #3-2 asserting a claim of $233,295)
- Unsecured non-priority claims with a stated amount of $4,798,983.61: Beitler for $430,694.68 (State Court Litigation); Commercial Bank for $242,887.61 (Commercial Bank Litigation); FCB for $1.8 million (FCB Litigation); $1.4 million on first and second deeds of trust on the Malibu

-3-

        Property; and a variety of medical bills, credit cards, professional fees, and tax penalties
- Unsecured nonpriority unsecured claims of unknown amount: two personal guaranties on loans to AFG 2, one personal guaranty on a loan to AFG 4, a doctor's bill, and a deficiency claim on a car loan or lease.

The Debtor amended his schedules twice, but the latest version of his schedules – filed September 24, 2014 – has changed only by *de minimus* amounts from the original schedules.

      On October 13, 2014, the Debtor commenced an adversary proceeding against Denos and certain of his affiliates (14-ap-01182 (dkt. 77); the "Fraudulent Transfer Adversary"), (i) asserting that the Malibu Property was worth significantly more than the $3,068,855.17 in value that Denos provided the Debtor in exchange for the Property and (ii) seeking the avoidance of the sale of the Malibu Property to Denos as a fraudulent transfer.

      On November 6, 2014, the Debtor commenced an adversary proceeding against Beitler and the AFG Entities (14-ap-01195 (dkt. 88); the "Beitler Adversary"), (i) asserting breach of the AFG and AFG 5 operating agreements, mismanagement, and violation of the automatic stay, and (ii) seeking turnover of estate assets, appointment of a trustee over AFG, an injunction against unauthorized distributions from AFG 5, and disallowance of claim 10 filed by AFG 7.  (On December 10, 2014, Beitler moved to dismiss the Beitler Adversary.  After briefing and a hearing, the Court denied this motion by order entered February 3, 2015 (Beitler AP dkt. #17, #49).)

      The Debtor has obtained extensions of his exclusive periods to file a plan of reorganization and to obtain acceptances for his plan, these periods now expire on Jul 6, 2015 and October 4, 2015, respectively (dkt. 74).

      On February 5, 2015, Beitler filed this motion to dismiss this chapter 11 case for cause (the "Motion"). (The Debtor's initial opposition to the Motion and Beitler's initial reply focused on the issue of notice under Fed. R. Bankr. P. 2002(a)(4). As a result of that issue, the Court ordered the Motion to be renoticed to all creditors and the hearing on the Motion to be continued from February 19, 2015 to March 26, 2015 (dkt. 154). After Beitler made an emergency motion to reschedule the March 26 hearing, the Court ruled that the hearing on the Motion would be vacated and the Court would issue a memorandum of decision and order based upon the pleadings (dkt. 180).  This memorandum is based on the written pleadings submitted by the parties, primarily the Debtor's opposition and Beitler's supplemental reply, which were both filed after the issue of notice had been resolved.)

Dismissal under 11 U.S.C. § 1112(b)

-4-

Bankruptcy Code § 1112(b) provides that the court shall convert or dismiss a chapter 11 case upon a showing of cause:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). The bankruptcy court has broad discretion in determining what constitutes "cause" under § 1112(b). *See Mitan v. Duval (In re Mitan),* 573 F.3d 237, 247 (6th Cir. 2009); *Sullivan v. Harnisch (In re Sullivan),* 522 B.R. 604, 614 (B.A.P. 9th Cir. 2014); *Chu v. Syntron Bioresearch, Inc. (In re Chu),* 253 B.R. 92, 95 (S.D. Cal. 2000).

Section 1112(b)(4) sets out a long (and non-exclusive) list of examples of cause. While that list does not include a lack of good faith, numerous courts have found such a lack of good faith to be grounds for dismissal or conversion under § 1112(b). "Although section 1112(b) does not expressly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *see also Sullivan,* 522 B.R. at 614.

A chapter 11 case is not filed in good faith if it represents an attempt "to unreasonably deter and harass creditors." *Marshall v. Marshall (In re Marshall),* 721 F.3d 1032, 1047 (9th Cir. 2013). "Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process." *Idaho Dep't of Lands v. Arnold (In re Arnold),* 806 F.2d 937, 939 (9th Cir. 1986); *Sullivan*, 522 B.R. at 617. Good faith depends on an "amalgam of factors, not a specific fact or facts. *Marshall*, 721 F.3d at 1048; *Marsch*, 36 F.3d at 828; *Arnold*, 806 F.2d at 939.

Beitler argues that cause for dismissal or conversion is shown by the Debtor's solvency. However, solvency in and of itself is not "cause" for dismissal under § 1112(b). *In re Stolrow's, Inc.,* 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988). It is significant only as a factor indicating some greater abuse of the bankruptcy process. Solvency has never been a requirement for filing for bankruptcy relief. *See, e.g., Meyer v. Lepe (In re Lepe),* 470 B.R. 851, 862 (B.A.P. 9th Cir. 2012). (The Debtor's scheduling of his assets and liabilities does not appear deceptive or to be an attempt to "hide the Debtor's solvency" as Beitler argues.)

That is particularly true when the debtor lacks the present ability to pay his obligations. The bulk of the Debtor's assets, as asserted by Beitler, are in his 50% interest in AFG 5 and any equity in the Malibu Property that may be realized upon successful litigation of the Fraudulent Transfer Litigation. Neither provides the Debtor with liquid assets. On the petition date, the Debtor had about $10,000 in cash and was

unable to meet his living expenses and costs of litigation. He had no liquid assets to pay a judgment in any of the three lawsuits pending against him. *See, e.g., Marshall*, 721 F.3d at 1048 ("Here, unlike in *Marsch* and *Boynton*, the record suggests that Howard and Ilene's liquid assets were probably insufficient to satisfy the judgment or cover the cost of a supersedeas bond.")

Beitler argues that this case is essentially a two-party dispute between Beitler and the Debtor, and should accordingly be dismissed. However, "[p]etitions in bankruptcy arising out of a two-party dispute do not per se constitute a bad-faith filing by the debtors." *Sullivan*, 522 B.R. at 616 (quoting *Stolrow's,* 84 B.R. at 171). "Typical bad faith two-party dispute cases may involve delays on the eve of trial (litigation tactics), forum shopping, new-debtor syndrome (special purpose entities), repeat filers, and repeatedly delayed foreclosure sales." 522 B.R. at 616. This case involves none of these bad-faith indicators.

Furthermore, looking at the Debtor's liabilities, assets, and litigation, the Court cannot conclude that this is essentially a two-party dispute. The two most significant actions against the Debtor are by Beitler and AFG Entities, but that is only because Beitler purchased FCB's claim against the Debtor after the petition date. To the extent this is now a two-party dispute, Beitler helped make it so. This hardly speaks to the Debtor's good faith. In any event, the Commercial Bank Litigation and the Fraudulent Transfer Adversary both involve creditors unrelated to Beitler and the AFG Entities. Additionally, there are significant tax and other unsecured claims against the Debtor.

Beitler argues that the Debtor should not use the estate's money to fund his litigation. But if Beitler is correct that the Debtor is solvent, then the money is coming, not from the creditors, but from the debtor's residual interest in his assets. Even if the Debtor is insolvent, the litigation may be a prudent use of the estate's assets if likely to yield a substantial recovery. Furthermore, this analysis would be same in or outside of bankruptcy; bankruptcy merely gives the Debtor the short-term ability to devote its current assets to fund the litigation rather than the claims of creditors. (If Beitler is correct that the Debtor is highly solvent, this is will not harm the creditors.)

Beitler's argument that the Debtor is using this chapter 11 as a sword and shield in the State Court Litigation is completely undermined by the events in this chapter 11 – the Debtor stipulated to relief from the stay so that Beitler could continue to prosecute the State Court Litigation. As for the Debtor's aggressive litigation tactics, a brief review of the pleadings and docket in this case makes clear that the litigation between the Debtor and Beitler is hard fought. While the Court urges the parties to attempt to reach a consensual resolution of these issues, aggressive litigation is not grounds to dismiss a chapter 11.

A brief review of the most recent Ninth Circuit and Ninth Circuit Bankruptcy Appellate decisions reinforce the Court's conclusion that this case should not be dismissed for lack of good faith. (In light of these recent decisions, Beitler's reliance on *In re Silberkraus,* 253 B.R. 890 (Bankr. C.D. Cal. 2000), is misplaced. In addition to being a 15-year-old bankruptcy court decision, *Silberkraus* involved blatant forum

shopping and a debtor who failed to file a plan of reorganization by court-imposed deadlines and admitted he could not confirm a plan over current creditor objections.)

In *Marshall*, the husband and wife debtors (with an admitted net worth of over $22 million) filed for chapter 11 relief when they were unable to finance a supersedeas bond to stay enforcement of a $12 million fraud judgment. After concluding that the debtors' liquid assets were probably insufficient to satisfy the judgment or obtain a supersedeas bond, the Court concluded that the chapter 11 filing was not in bad faith (despite the fact that the debtors had "minimal unsecured debt" and the fraud judgment made up 82% of their scheduled claims):

> However, notwithstanding their minimal unsecured debt, the Debtors' decision to file for bankruptcy does not indicate bad faith in light of the size of the Texas Fraud Judgment and the potential cost of obtaining a bond. As the bankruptcy court noted, all debtors file for bankruptcy in order to delay creditor action. Thus, although the Debtors' main motivation may have been to ameliorate the burden of the judgment, given that the Plan proposed payment of the judgment, we cannot say that they filed a Chapter 11 petition in order to avoid paying it altogether, or to unduly deter or harass creditors

*Marshall,* 721 F.3d at 1049 (9th Cir. Cal. 2013).

This Debtor has more substantially more unsecured debt (unrelated to Beitler) than the *Marshall* debtors. The *Marshall* chapter 11 was used to stop enforcement of the judgment, while this chapter 11 has *not* been used to stop Beitler's State Court Litigation. Like the *Marshall* debtors, the Debtor lacks the liquid assets to pay the claims against him.

In *Sullivan*, the BAP determined that a chapter 11 filed on the 89th day after a $1.5 million judgment lien was perfected should not be dismissed for lack of good faith. The total value of the debtor's assets was estimated at about $749,000, exclusive of potential tax refunds, performance bonuses, and claims pending against the judgment lien holder. On the other hand, the Debtor estimated a total of about $217,000 of unsecured claims, in addition to the judgment. The Court rejected the bankruptcy court's conclusion that this was a 'two-party dispute" filed for the sole purpose of stopping collection of the judgment. It concluded that the record did not show that the Debtor's use of chapter 11 to stop collection of the judgment was "unreasonable or intended to harass" the judgement creditor. 522 B.R. at 615.  Instead the court found a financially beleaguered debtor:

> Based on Debtor's schedules and statement of financial affairs, for at least the two years preceding the bankruptcy filing, Debtor supplemented his salary with substantial withdrawals from retirement accounts, credit cards, and significant loans from family members. Then two months before filing, Appellees commenced aggressive collection efforts, freezing or levying against bank and brokerage accounts. The Debtor concurrently continued to incur substantial legal

fees. As stated in Debtor's declaration in opposition to the motion, which was not disputed by any evidence submitted by Appellees, the litigation costs, entry of the judgment, and unpaid legal bills left him insolvent. Appellees' contrary argument that Debtor was solvent and could and should have paid Appellees' judgment is not supported by the record.

….

Debtor's petition, filed within 89 days of perfection of Appellees' judgment lien, not only appropriately provided Debtor a breathing spell, it laid the ground work for another key goal underlying the bankruptcy process, leveling the playing field for other creditors of the estate.

*Id.*

The evidence before this court shows a Debtor, much like *Sullivan*, who has been in increasing financial distress over the few years before bankruptcy. While much of that distress may be driven by the litigation with Beitler, just as in *Sullivan* it has permeated his financial affairs: he had sold his home, became a defendant in three different lawsuits, was accruing substantial attorney fees, and was running short of liquid assets to pay expenses and satisfy creditors. The Court cannot say that this Debtor filed for chapter 11 relief to "unreasonably deter and harass creditors" or as "a clear abuse of the bankruptcy process."

**Motion denied**.  An order on the Motion to Dismiss will issue separately.

Evidentiary Objections of the Debtor

*To the Declaration of Ian Parker:*  overruled.

*To the Declaration of Barry Beitler:* overruled.

//

//

//

//

//

//

//

//

-8-

<u>Evidentiary Objections of Beitler</u>

*To the Declaration of Jeffrey Hayden:*
- ¶¶ 1-6, 8-13, 15 (after first sentence), 16, 17, 19, 24, 26-29: overruled
- ¶¶ 7, 14, 15 (first sentence), 18, 20-23, 25: sustained

*To the Declaration of Robyn Sokol:*
- ¶¶ 1, 2, 4: overruled
- ¶ 3: sustained

###

Date: May 6, 2015

*(signature)*
Maureen A. Tighe
United States Bankruptcy Judge